IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:93CR215-MU

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) |
| CARLOS EMANUEL KINARD, | ) |
| | ) |
| Defendant. | ) |
| ________________________________________ | ) |

**UNITED STATES' RESPONSE TO KINARD'S SENTENCING MEMORANDUM**

Carlos Emanuel Kinard seeks a reduction in his sentence under The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). On remand from the Fourth Circuit, this Court is now asked to consider whether Kinard's sentences function as a sentencing package, such that Kinard is eligible for a reduction in his sentence for both "covered" and "noncovered" offenses and, if so, whether the sentencing factors described in 18 U.S.C. § 3553(a) warrant a sentence reduction. Even if this Court finds that Kinard's sentences function as a sentencing package and that he is therefore eligible for a sentence reduction on covered and noncovered offenses, the United States opposes any reduction because the Sentencing Guidelines still advise a sentence of life in prison and the change to 18 U.S.C.

§ 924(c) is not retroactively applicable. Additionally, the § 3553(a) sentencing factors weigh against any discretionary reduction in Kinard's sentence.

## BACKGROUND AND PROCEDURAL HISTORY

Between 1989 and 1993, Kinard participated in a violent drug-trafficking organization that distributed crack cocaine in Charlotte, North Carolina. WDNC Case No. 3:93CR215, Doc. 252 ¶¶ 16–22, 25, 31–33, 35. In June of 1992, Kinard participated in a home-invasion robbery with other members of the organization. *Id.*, Doc, 252 ¶ 22. During the robbery, Kinard and his coconspirators stole 28 grams of crack and shot and seriously injured a 12-year-old boy who was present during the robbery. *Id.* In June of 1993, Kinard participated in a second home invasion, having heard that there was more than $30,000 and crack cocaine in the apartment. *Id.*, Doc. 252 ¶ 31. Sabrina Wilson and her five children were on the second floor of the apartment when Kinard and his coconspirators entered. *Id.*, Doc. 252 ¶ 32. Kinard and some of his coconspirators were told to "kill them all," and Kinard shot and murdered a 15-year-old boy. *Id.*, Doc. 252 ¶¶ 32–33. Kinard also shot a second victim in the foot. *Id.* Another resident was shot during the attempted robbery, and two young women, ages 16 and 20, were kidnapped. *Id.*, Doc. 252 ¶ 31. This organization was responsible for the distribution of approximately 46.5 kilograms of crack cocaine. *Id.*, Doc. 252 ¶ 35. At the time Kinard committed his offense, he had previously been convicted of four drug-trafficking offenses. *Id.*, Doc. 252 ¶ 110.

A federal grand jury indicted Kinard and charged him with conspiracy to possess with intent to distribute crack cocaine, 21 U.S.C. § 846. *Id.*, Doc. 3 at 1. Kinard was also charged with racketeering conspiracy, 18 U.S.C. § 1959; murder in aid of racketeering, 18 U.S.C. § 1959(a)(1); three counts of assault with a dangerous weapon in aid of racketeering, 18 U.S.C. § 1959(a)(3); two counts of kidnapping in aid of racketeering, 18 U.S.C. § 1959(a)(1); two counts of using and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c); three counts of using and carrying a firearm during and in relation to a drug-trafficking offense, 18 U.S.C. § 924(c); two counts of possessing with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1); possessing a short-barreled shotgun, 26 U.S.C. §§ 5861(c), 5871. *Id.*, Doc. 18.

The United States dismissed one assault-in-aid-of-racketeering offense, two section 924(c) firearm offenses, and the sawed-off shotgun offense. *Id.*, Doc. 136 at 1. A jury found Kinard guilty of the remaining offenses. *Id.*

This Court's probation office submitted a presentence report and calculated a total offense level of 43, yielding a Sentencing Guidelines sentence of life in prison for all but the assault-in-aid-of-racketeering and section 924(c) firearm offenses. *Id.*, Doc. 252 ¶¶ 127. Kinard faced a statutory maximum of 20 years in prison for the assault offenses. *Id.*, Doc. 252 ¶ 126. Kinard faced a statutory mandatory-minimum consecutive term of 5 years in prison for the first section 924(c) firearm offense and 20 years in prison for the second and third section 924(c) firearm offenses. *Id.*, Doc. 252 ¶ 126.

This Court sentenced Kinard to seven sentences of life in prison, to run concurrently; to two sentences of 20 years in prison for the assault offenses, to run concurrently; and to one sentence of 10 years and two sentences of 20 years to run consecutively to all other counts for the section 924(c) firearm offenses. *Id.*, Doc. 136 at 2.

In January of 2021, Kinard asked this Court to reduce his sentence under section 404 of the First Step Act. That Act authorizes this Court to reduce the sentence of a defendant serving a sentence for most crack-cocaine offenses "as if Section 2 or 3 of the Fair Sentencing Act of 2010, (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." 132 Stat. at 5222. This Court granted in part and denied in part Kinard's motion. WDNC Case No. 3:93CR214, Doc. 266. This Court found that Kinard was eligible for a sentence reduction on his drug-trafficking offenses — Counts One, Eleven, and Twelve — and that had the Fair Sentencing Act been in effect when he was sentenced, he would have received a sentence of no more than 20 years in prison for those offenses. *Id.*, Doc. 266 at 3. This Court reduced Kinard's sentence on those counts to 20 years in prison. *Id.* This Court held that Kinard was not entitled to a reduction in his sentence on his non-covered offenses. *Id.*

Although Kinard asked this Court to reduce his sentence because the First Step Act also changed the "stacking" rules for § 924(c) offenses, this Court declined to reduce Kinard's sentence, explaining that section 403 of the Act, which made that change, was not made retroactive for defendants who were sentenced before the

effective date of the Act. *Id.*, Doc. 266 at 4. This Court also found that a reduction of those sentences was not warranted in any event, because the § 3553(a) sentencing factors weighed against any reduction in those sentences. *Id.*, Doc. 266 at 5. Specifically, this Court rejected Kinard's argument that his "age at the time of the offenses and his post-sentencing conduct" warranted a sentence reduction. *Id.* This Court found that Kinard's § 924(c) sentences "reflect the seriousness of his offenses, including the extremely violent and dangerous nature of his offenses," which "led to murder, kidnapping, and other violence." *Id.* This Court explained that Kinard's sentences were necessary to promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes. *Id.*

Kinard appealed, and the Fourth Circuit vacated this Court's order denying in part Kinard's motion for a reduced sentence. *United States v. Kinard*, No. 21-7118, 2024 WL 2746970 (4th Cir. May 29, 2024). Applying its decision in *United States v. Richardson*, 96 F.4th 659 (4th Cir. 2024), the Court explained that where a defendant's sentences function as a single sentencing package, a district court has discretion under § 404 of the First Step Act to reduce the defendant's covered and noncovered offenses. *Kinard*, No. 21-7118, Doc. 18 at 4. The Fourth Circuit explained further that this Court is best suited to determine, in the first instance, whether it sentenced Kinard's sentences as a package. *Id.* The Court remanded this matter for this Court to determine whether Kinard's sentences comprise a single sentencing package and, if so, whether his sentence on both covered and

noncovered offenses should be reduced. *Id.* The Fourth Circuit stated that it took "no position on whether Kinard's overall sentence should be reduced further." *Id.*, Doc. 18 at 4–5.

## ARGUMENT

**The United States opposes any reduction in Kinard's sentences.**

Even assuming this Court determines that Kinard's sentences comprise a single sentencing package, the United States opposes any reduction in Kinard's sentences. As the probation office has noted in its recently filed second supplement to the presentence report, the Sentencing Guidelines continue to advise a sentence of life in prison for certain of Kinard's offenses, including his VICAR offenses, Counts Two and Twenty-Eight through Thirty-Two. And while Kinard would face three consecutive terms of 10 years in prison if sentenced today, instead of 50 years consecutive to his other sentences, the § 3553(a) sentencing factors do not weigh in favor of any reduction in his sentence.

First, the nature and seriousness of Kinard's offense conduct weighs in favor of retaining his current life sentence. Kinard participated in two offenses that resulted in the murder of a young boy — one 12-year-old boy and one 15-year-old boy. These offenses were committed a year apart. And Kinard himself shot and killed the 15-year-old boy a year after he participated in a home-invasion robbery that resulted in the 12-year-old's murder. The second murder also occurred during a home-invasion robbery during which Kinard shot a different 12-year-old boy and during which two young women were kidnapped. Kinard asserts that he cried and

was remorseful after he committed his offenses, but he committed the second two shootings a year after the first and both offenses resulted in the murder of a young boy.

Second, Kinard's criminal history weighs against any discretionary sentence reduction. At the time he committed Wright's murder, he had already been convicted of four drug-trafficking offenses and had committed in the home-invasion robbery that had resulted in a murder of a young boy. Kinard notes that he was 19 years old when he killed Wright and suggests that his youth would warrant a downward departure under Sentencing Guidelines § 5H1.1 if he were sentenced today. That guideline authorizes a downward departure based on a defendant's youthfulness at the time of the offense or prior offenses. That guideline specifically notes that certain risk factors — some of which Kinard experienced — may affect a young person's development into the mid-20's and contribute to "involvement in criminal justice systems." U.S.S.G. § 5H1.1. Although Kinard experienced a difficult childhood, both witnessing and experiencing trauma, his youthfulness at the time he committed his offenses would not warrant a downward departure if he were sentenced today and does not warrant a sentence reduction under the circumstances of this case. Kinard's offenses did not simply involve his "involvement" in the criminal-justice system but instead involved his murder of a 15-year-old boy, his shooting of a 12-year-old boy, and his involvement in the murder of a second 12-year-old boy and kidnapping of two young women.

Third, as this Court found previously, the need to deter Kinard and others from committing similarly horrific crimes warrants the life sentence Kinard is currently serving. Similarly, the need to promote respect for the law, to provide just punishment, and to protect the public support Kinard's life sentence. Kinard has made significant strides while in the Bureau of Prisons, as he argues, and he has submitted an impressive number of letters, demonstrating support for him and evidencing his mentorship of fellow inmates at least while he has been incarcerated at the Deyton Detention Facility. But his Bureau of Prisons record is not close to clean. He has committed 12 disciplinary infractions while in the BOP, possessing intoxicants on five occasions and a dangerous weapon on one occasion. While his most recent infraction was three-and-a-half years ago and most were between 1995 and 2010, he has not shown that he no longer poses any threat to the community. At 50 years old, he is still young enough to pose a threat, and his rehabilitative efforts are laudable but not extraordinary.

Fourth, the need to avoid unwarranted sentence disparities does not weigh in favor of a reduced sentence. Kinard notes that most of his co-conspirators received shorter sentences, but those co-conspirators all pleaded guilty. *See United States v. Susi*, 674 F.3d 278, 288 (4th Cir. 2012) ("Section 3553(a)(6)'s avoidance of unwarranted sentencing disparities does not require courts to sentence similarly individuals who go to trial and those who plead guilty. They are not similarly situated for sentencing purposes."). Jermaine Padgett, who was tried with Kinard, also received multiple life sentences and remains in the Bureau of Prisons.

Kinard's youth, his familial support, and his rehabilitative efforts are important. But none of those factors outweighs the factors weighing in favor of the life sentence Kinard is currently serving. Although this Court has the authority to reduce Kinard's sentence and could choose to reduce Kinard's § 924(c) sentences to three consecutive sentences of 10 years each, the United States believes that Kinard's offense conduct, his criminal history, and the § 3553(a) sentencing factors this Court earlier determined supported the denial of a discretionary sentence reduction continue to support that earlier conclusion. The Fourth Circuit has made clear that this Court is not compelled to reduce Kinard's sentence. And for the reasons described, the United States believes this Court should not reduce Kinard's sentence.

## CONCLUSION

Because the sentencing factors of section 3553(a) weigh against a reduction of any of Kinard's sentences, the United States objects to any sentence reduction.

RESPECTFULLY SUBMITTED, this the 14th day of November, 2024.

DENA J. KING
UNITED STATES ATTORNEY

s/Amy E. Ray
Assistant United States Attorney
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Telephone: (828) 271-4661
Fax: (828) 271-4670
E-mail: Amy.Ray@usdoj.gov

## CERTIFICATION

The undersigned certifies:

1. The undersigned did not employ any artificial intelligence in preparing this response, with the exception of such artificial intelligence embedded in the standard on-line legal research sources;

2. The undersigned has checked every statement and every citation to an authority contained in this document and believes she has accurately used and cited that authority.

This the 14th day of November, 2024.

s/Amy E. Ray
Assistant United States Attorney